<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ORTHO-CLINICAL DIAGNOSTICS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PHYSICIANS STAT LAB, INC., *et al.*,<br><br>Defendants. | Civil Action No. 21-2530 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court on Defendant Physicians Stat Lab, Inc.'s ("PSL") Motion to Dismiss for Lack of Personal Jurisdiction and, alternatively, to Transfer Venue (the "Motion," ECF No. 5), which Plaintiff Ortho-Clinical Diagnostics, Inc. ("Ortho") opposed. (ECF No. 9). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Rule 78.1. For the reasons below, the Court denies PSL's Motion.

I.     <u>**BACKGROUND**</u>

A.     **The Agreement**

In this breach-of-contract action, Ortho seeks to hold PSL liable as a successor-in-interest to Defendant Fulcrum Clinical Laboratories, Inc. ("Fulcrum"). (*See generally* Compl., ECF No. 1) Ortho is an in vitro diagnostics company that produces diagnostic equipment for blood testing. (*Id.* ¶ 5.) Ortho is incorporated in New York and has its principal place of business in New Jersey. (*Id.* ¶ 2.) PSL is a Florida company that provides medical laboratory services. (*Id.* ¶¶ 4, 7.) Fulcrum is a defunct Florida company that provided medical laboratory services. (*Id.* ¶¶ 3, 6, 23.)

In December 2015, Ortho and Fulcrum entered into an agreement whereby Ortho allowed Fulcrum to use its medical diagnostic equipment in exchange for Fulcrum's promise to meet certain minimum purchase requirements (the "Agreement"). (*Id.* ¶¶ 8–9.) The Agreement was for a term of seven years and, among other things, prohibited Fulcrum from assigning its rights or obligations without Ortho's prior written consent. (*Id.* ¶¶ 9, 16.)

Ortho alleges that Fulcrum failed to meet its minimum purchase requirements "during its third year of the term and failed to pay service invoices issued in connection with the Agreement[]." (*Id.* ¶ 17.) Consequently, Ortho terminated the Agreement and requested that Fulcrum pay the outstanding balance, approximately $400,000. (*Id.* ¶¶ 19–21.) Ortho alleges that in response, PSL "contacted Ortho and advised that it had acquired Fulcrum." (*Id.* ¶ 22.) According to Ortho, "[p]rior to this time, Fulcrum had not advised Ortho that it had been acquired by [PSL], nor did it seek Ortho's consent to assign any of its obligations . . . to [PSL]." (*Id.*) PSL thereafter "communicated to Ortho that [it] wished to pay [Fulcrum's] outstanding invoices" but ultimately declined to do so. (*Id.* ¶¶ 26–29.)

## B.      Procedural History

On November 24, 2020, Ortho filed the present breach-of-contract action against PSL and Fulcrum.[1] (*See* Compl.) On February 12, 2021, PSL removed the matter to this Court. (Notice of Removal, ECF No. 1.) The following week, PSL filed the instant Motion. (*See* Def.'s Moving Br., ECF No. 5.) PSL opposed on March 22, 2021. (ECF No. 9.) Discovery in this matter is currently ongoing. (*See* ECF No. 24.)

---

[1] A clerk's entry of default was entered against Fulcrum in April 2021, followed by an entry of final default judgment in June 2021. (*See* ECF No. 21.)

## II.   LEGAL STANDARD

### A.   Personal Jurisdiction

Under Rule 12(b)(2),[2] a defendant may move to dismiss an action for lack of personal jurisdiction. In diversity cases, the Court "has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). "New Jersey's long arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citing N.J. Ct. R. 4:4-4(c)). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Id.* (citing *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 149 (3d Cir. 1992)). When no evidentiary hearing is held, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Id.* at 97 (citation omitted).

### B.   Transfer of Venue

Section 1404(a) permits a court to transfer a federal action from one district to another "[f]or the convenience of parties and witnesses, in the interest of justice," so long as the transferee court is one in which the action could have been brought originally. 28 U.S.C. § 1404(a). This inquiry requires an "individualized, case-by-case consideration of convenience and fairness." *See Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). As such, courts consider various private and public interest factors. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The burden to justify transfer rests with the movant, who must "show the proposed alternative forum is not

---

[2] All references to a "Rule" hereinafter refer to the Federal Rules of Civil Procedure.

only adequate, but also more appropriate than the present forum." *Hoffer v. Infospace.com, Inc.*, 102 F. Supp. 2d 556, 572 (D.N.J. 2000).

## III.   DISCUSSION

PSL argues that dismissal is warranted because the Court "lacks specific personal jurisdiction over [it based] on a successor liability theory." (Def.'s Moving Br. 5.) Alternatively, PSL argues that the relevant private and public interest factors weigh in favor of transferring this matter to the Middle District of Florida. (*Id.* at 8–11.) Both arguments fail.

### A.   Ortho Established a Prima Facie Case of Personal Jurisdiction.

PSL does not dispute that Fulcrum has sufficient minimum contacts with New Jersey for purposes of personal jurisdiction. Rather, PSL argues that those contacts cannot be imputed to PSL because PSL is not a successor to Fulcrum. (*Id.* 5–8.)

"[T]he jurisdictional contacts of a predecessor corporation may be imputed to its successor corporation without offending due process." *Am. Ests. Wines, Inc. v. Kreglinger Wine Ests. Pty*, No. 07-2474, 2008 WL 819993, at *5 (D.N.J. Mar. 25, 2008) (quoting *Wortham v. Karstadtquelle*, 153 F. App'x 819, 825 (3d Cir. 2005)). In determining whether personal jurisdiction over a successor exists, courts apply the same test used for successor liability. *See Pastor Enters. v. GKN Driveline N. Am., Inc.*, No. 19-21872, 2020 WL 5366286, at *3 (D.N.J. Sept. 8, 2020). Under New Jersey law, a successor may be liable if "(1) the successor expressly or impliedly assumes the predecessor's liabilities; (2) there is actual or de facto consolidation or merger of the seller and the purchaser; (3) the purchaser is a mere continuation of the seller; or (4) the transaction is entered into fraudulently to escape liability."[3] *Id.* (quoting *Oticon, Inc. v. Sebotek Hearing Sys., LLC*, 865 F. Supp. 2d 501, 508 (D.N.J. 2011)).

---

[3] The parties do not dispute that New Jersey law applies.

Although PSL claims that none of the grounds for successor liability apply, the Court need only address the second and third grounds—de facto merger and continuation—which "are generally treated identically." *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 464–65 (3d Cir. 2006) (citing *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 73 (3d Cir. 1993)) (noting that, for the second and third grounds, "much [of] the same evidence is relevant to each determination"). "In determining whether a particular transaction amounts to a de facto consolidation or mere continuation, most courts consider four factors:" (1) "continuity of management, personnel, physical location, assets, and general business operations"; (2) "a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible"; (3) "assumption . . . of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor"; and (4) "continuity of ownership/shareholders." *Glynwed, Inc. v. Plastimatic, Inc.*, 869 F. Supp. 265, 275–76 (D.N.J. 1994). "Not all of these factors need be present for a de facto merger or continuation to have occurred. The crucial inquiry is whether there was an intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets." *Luxliner*, 13 F.3d at 73 (internal quotation marks and citations omitted).

Here, PSL argues—unsurprisingly—that "the Complaint contains *no factual allegations* to support the claim that PSL 'is liable as a successor entity because . . . the transactions by which . . . [PSL] acquired Fulcrum's assets amount to a consolidation or merger.'" (Def.'s Moving Br. 6 (emphasis added) (quoting Compl. ¶ 68).) In doing so, PSL ignores the following allegations, among others, that relate to the above-listed factors: that PSL and Fulcrum executed an Asset Purchase Agreement ("APA") in which PSL "acquired all or substantially all of Fulcrums [sic] assets and liabilities"; that since acquiring Fulcrum, PSL "has stepped into the shoes of Fulcrum

in all material ways, including . . . carrying on the same business, maintaining the same physical location, equipment, computers, files and customer/patient and vendor lists, agreements and/or relationships"; and that PSL "communicated to Ortho that [PSL] wished to pay the outstanding invoices owed" by Fulcrum, but ultimately declined to do so. (Compl. ¶¶ 23–29.) Liberally construed, the Complaint sufficiently pleads facts to support a claim for successor liability.

PSL's argument that its transaction with Fulcrum does not amount to a de facto merger or a continuation also fails. For one, PSL's entire argument rests on a self-serving declaration from its President and Chief Executive Officer, Nathan Hawkins. (Def.'s Moving Br. 7–8.) Despite this, contrary to PSL's suggestion, Hawkins's self-serving statements do not establish that none of the above-listed factors are met.

Take, for example, the first factor—continuity of management, personnel, physical location, assets, and general business operations. By Hawkins's own account, "PSL and Fulcrum entered into [the APA] pursuant to which PSL acquired substantially all of Fulcrum's business assets." (Hawkins Decl. ¶ 10, ECF No. 5-3.) And "[a]fter the APA closed, PSL contracted with Ryan Cummins," one of two former Fulcrum corporate officers, "to serve as an independent contracting consultant." (*Id.* ¶¶ 6, 16.) Moreover, according to Hawkins, although "PSL made the strategic decision to relocate its principal office to the building that Fulcrum had occupied," PSL occupies more space than did Fulcrum—as if the latter fact somehow neutralizes or negates the former. (*Id.* ¶ 11; *see* Def.'s Moving Br. 7 (asserting, without explanation, that "PSL took over the Fulcrum space and additional space making the prior Fulcrum space only approximately twenty percent (20%) of the total PSL space (citing Hawkins Decl. ¶¶ 10, 24)).) Similarly, Hawkins acknowledges that, as did Fulcrum, PSL "engage[s] in the business of clinical laboratory testing and molecular testing for assisted living patients," but notes that PSL's business extends to

"primary care patients, urgent care patients, and physician-directed clients." (Hawkins Decl. ¶¶ 12–13.) On these facts, and especially considering that Ortho "is entitled to have its allegations taken as true and all factual disputes drawn in its favor," *Miller Yacht Sales*, 384 F.3d at 97, the first factor weighs in favor of Ortho.

That last point—that all factual disputes should be drawn in Ortho's favor—is fatal to PSL's overall argument. At bottom, PSL invites the Court to find at this juncture that, based on Hawkins's declaration, there are no disputed issues of material fact as to whether PSL can be held liable as a successor to Fulcrum. The Court declines to do so. PSL's Motion involves inherently fact-sensitive issues, such as intent, that cannot be determined based on conclusory assertions like "the intent of PSL and Fulcrum was to effectuate a sale of assets rather than a merger or consolidation."[4] (Def.'s Moving Br. 7; Hawkins Decl. ¶ 25 (same)); *see Luxliner*, 13 F.3d at 73 ("The crucial inquiry is whether there was an intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets.").

Based on the foregoing, the Court finds that Ortho sufficiently established a prima facie case of personal jurisdiction based on the theory of successor jurisdiction and, accordingly, denies PSL's Motion to Dismiss.

---

[4] What's more, in opposing to PSL's Motion, Ortho submitted an uncontested certification from its Vice President and Associate General Counsel, Gina Dunsmuir. (ECF No. 9-1.) Among other things, Dunsmuir attached certain service orders to purportedly show that PSL continued to use Ortho's equipment and services even after Fulcrum was dissolved. (*See* Dunsmuir Cert. ¶ 15; Pl.'s Opp'n Br. 15–16.) Again, PSL failed to address any of these representations.

**B.      PSL Failed to Establish that Transfer Is Warranted.**

Without any support or citations to the record, PSL makes conclusory arguments that the private and public interest factors weigh in favor of transfer. (Def.'s Moving Br. 10–11.)[5] PSL's cursory attempt to justify transfer merits a summary response from the Court.

Ortho's choice to sue in this District is entitled to great weight because Ortho's principal place of business is in New Jersey.[6] *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 480 (D.N.J. 1993) ("When a plaintiff chooses [its] home forum, the choice is 'entitled to greater deference.'"). And given PSL's threadbare recital of the private and public factors for transfer, Ortho's "choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("The burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer," and "unless the balance . . . is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail." (citations omitted)). PSL's Motion to Transfer is therefore denied.

---

[5] For example, the private interest factors include (1) the plaintiff's choice of venue; (2) the defendant's preferred forum; (3) where the claim arose; (4) convenience of the parties as indicated by their relative physical and financial condition; (5) convenience of the witnesses with respect to their availability for trial; and (6) extent to which records or other documentary evidence would be available for production. *Jumara*, 55 F.3d at 879 (citations omitted). PSL's entire argument in support of the private interest factors consists of the following:

> Although [Ortho's] preference was New Jersey in its original choice, [Ortho] is a resident of and its principal place of business in New York. The Complaint does not allege that the claim arose in Jersey. The convenience of the parties also weighs in favor of the Florida Middle District in that the witnesses for the Defendants are in Florida and [Ortho] is incorporated in and has its principal place of business in New York. There is no indication that documents could not be produced in Florida.

(Def.'s Moving Br. 10.) PSL treated the public interest factors the same way. (*Id.* at 11–12.)

[6] In addressing the private interest factors, PSL incorrectly asserts that Ortho maintains its principal place of business in New York, rather than New Jersey (Def.'s Moving Br. 10), even after correctly noting New Jersey in its Notice of Removal (Notice of Removal ¶ 9).

## IV.    CONCLUSION

For the reasons set forth above, PSL's Motion to Dismiss and, alternatively, to Transfer

Venue is denied. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE