**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ORTHO-CLINICAL DIAGNOSTICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> FULCRUM CLINICAL LABORATORIES, INC., *et al.*, <br><br> Defendants. | Civil Action No. 21-2530 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Ortho-Clinical Diagnostics, Inc.'s ("Ortho") Motion to Reopen Matter, Enforce Settlement, and Enter Judgment Against Defendant Physicians Stat Lab. (ECF No. 40.) Defendant Physicians Stat Lab ("PSL") opposed (ECF No. 45), and Ortho replied (ECF No. 46). The Court has carefully considered the parties' arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Ortho's Motion is granted.

**I.   BACKGROUND**

   **A.   Factual Background**

Ortho initiated this action against PSL[1] in state court alleging breach of a series of agreements between Fulcrum and Ortho. (*See* Compl., ECF No. 1.) Ortho alleged that Fulcrum

---

[1] Fulcrum Clinical Laboratories, Inc. ("Fulcrum") is also a defendant. (*See* Compl.) Fulcrum failed to appear in this matter and default judgment was entered against Fulcrum in favor of Plaintiff on June 3, 2021. (ECF No. 21.) PSL is Fulcrum's successor-in-interest. (Pl.'s Moving Br. 1, ECF No. 40-1.)

breached the agreements by "failing to comply with its obligations to purchase certain committed volumes of product from a third-party distributor in exchange for Ortho allowing Fulcrum to use Ortho's sophisticated diagnostic equipment to perform the testing volume . . . to which it committed." (*Id.*) Ortho alleges that after this purported breach, Fulcrum failed to pay monies due for failure to comply with the purchase requirements. (*Id.* at 1-2.) Ortho further alleges that Fulcrum failed to pay other outstanding invoices. (*Id.*) Ortho also alleges that PSL is liable for Fulcrum's obligations as successor-in-interest. (Compl. ¶ 2.) PSL removed the action to this Court in February 2021. (ECF No. 1.)

The Court stayed the action pending mediation (which was ultimately unsuccessful) and then resumed discovery. (ECF Nos. 30, 33.) On April 6, 2022, the Court administratively terminated the action pending consummation of settlement. (ECF No. 35.) The order administratively terminating the action required the parties to file all appropriate documentation to dismiss the action or, if settlement could not be reached, to request that the Court reinstate the action within 60 days. (*Id.*) On April 18, 2022, Ortho filed a proposed Consent Order of Dismissal without Prejudice signed by Ortho and PSL (the "Consent Order"). (Consent Order, ECF No. 36-1.) The Consent Order included the following language: "ORDERED that this Court shall retain jurisdiction and, subject to the terms of the Settlement Agreement, this case may be reopened in accordance with those terms." (*See* Consent Order.) The Court ultimately entered the Consent Order.[2]

The parties entered into a Settlement Agreement (the "Settlement Agreement") on April 11, 2022. (*See* Settlement Agreement, Certification of Gina Dunsmuir ("Dunsmuir Cert."), ECF No. 40-5, Ex. A.) Pursuant to the Settlement Agreement, PSL was to pay Ortho $40,000 in five

---

[2] The Court entered the Consent Order on September 27, 2022. (*See* ECF No. 38.)

monthly installments of $8,000 by the 15th of each month starting in April 2022 and ending in August 2022. (*Id.* at 3.) In the event that PSL failed to pay one of the installments and failed to cure the missed payment within ten days of Ortho's notice of default, the Settlement Agreement provides that Ortho shall be entitled to judgment against PSL for the total amount owed prior to the Settlement Agreement (minus any payments made) plus interest and attorneys' fees. (*Id.* at 4.)

PSL timely made its installment payments to Ortho in April and May 2022. (Pl.'s Moving Br. 3.) PSL, however, never made another installment payment after May 2022, leaving its total amount paid at $16,000. (*Id.* at 3-4.) Ortho sent a notice of default to PSL on July 6, 2022. (*See* Notice of Default, Certification of Elisa M. Pagano ("Pagano Cert."), ECF No. 40-4, Ex. 2.) PSL acknowledged the default yet failed to cure it. (Pl.'s Moving Br. 4.) On August 24, 2022, Ortho filed correspondence with the Court noting that it anticipated having the Court retain jurisdiction over the matter (pursuant to the Consent Order) and requesting permission to file a motion to re-open the matter, enforce the terms of the Settlement Agreement, and enter judgment against PSL. (*See* Pagano Cert., Ex. 3.) In response, the Court held a telephone status conference with counsel. (*Id.* ¶ 8.) During the call, PSL explained that it was having "cash-flow issues" and would be in a better position to make installment payments in November 2022. (Pl.'s Moving Br. 4.) Ortho agreed to consider a proposal from PSL as to when it would be able to make its payments. (*Id.*) The Court directed the parties to update the Court regarding the settlement terms by November 20, 2022. (*Id.*)

The parties subsequently entered into an Amended Settlement Agreement (the "Amended Settlement Agreement"). (*See* Am. Settlement Agreement, Dunsmuir Cert., Ex. B.) Pursuant to the Amended Settlement Agreement, PSL was to pay Ortho (1) $10,000 on or before November 30, 2022, (2) $10,000 on or before December 31, 2022, and (3) $4,000 on or before January 15, 2023. (Am. Settlement Agreement 1-2.) PSL failed to make the first requirement payment under the

3

Amended Settlement Agreement. (Pl.'s Moving Br. 5.) Ortho reached out to PSL and informed it that if Ortho did not receive the payment by December 2, 2022, Ortho would seek relief from the Court. (*Id.*) PSL requested until December 5, 2022, to make the payment, and Ortho obliged. (*Id.*) Ortho did not receive the payment by December 5, 2022, and at the time the instant Motion was filed, it "ha[d] not received any payment from PSL pursuant to the Amended Settlement Agreement." (*Id.*) On December 8, 2022, Ortho sent e-mail correspondence to the Court seeking permission to file the instant Motion. (*See* ECF No. 39.) The Court granted this request. (*Id.*)

    **B.**    **Parties' Positions**

Ortho contends that it and PSL "voluntarily entered into a binding written settlement agreement and amendment thereto, which PSL . . . breached by failing to make the required payments and by failing to cure their breach when given notice thereof." (Pl.'s Moving Br. 7.) In accordance with the terms of the Settlement Agreement, Ortho asserts that it is entitled to "judgment in the amount of $408,436.59 as of the date of the Settlement Agreement, minus payments received to date, plus 8% interest from the date of the default along with contractual attorneys' fees and costs incurred . . . in connection with its collection efforts pursuant to the terms of the Settlement Agreement." (*Id.*)

PSL broadly argues that "this matter should be resolved." (Def.'s Opp'n Br. 1, ECF No. 45.) PSL does not dispute that the parties entered into a valid Settlement Agreement or Amended Settlement Agreement. (*See generally id.*) Nor does PSL dispute that it failed to make the required installment payments under both agreements. (*Id.*) Counsel for PSL contends that on January 25, 2023, it notified Ortho that PSL had wired $25,000 into Counsel's trust account, and he "could wire the remaining balance of $24,000 to retire the settlement that day." (*Id.* at 1.) Ortho refused to accept the payment. (*Id.*) To "'sweeten the deal' . . . and with a nod towards nearly the exact amount of attorney's fees sought with the instant [M]otion," Counsel for PSL then offered to pay

4

Ortho $16,000 over the amount due, for a total of $40,000. (*Id.*) Ortho also rejected this offer. (*Id.*) PSL recognizes that the installment payments were not timely made but asserts that the matter could be over now, and Ortho could be made whole. (*Id.* at 2.)

## II.   **LEGAL STANDARD**

"The stakes in summary enforcement of a settlement agreement and summary judgment on the merits of a claim are roughly the same—both deprive a party of his right to be heard in the litigation." *Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991) (citation omitted). Courts, therefore, treat a motion to enforce a settlement under the same standard as a motion for summary judgment, *id.* at 1032, and grant the motion when the moving party demonstrates that there is no genuine dispute of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

A settlement agreement between parties in a lawsuit is a contract and is, therefore, governed by state contract law. *Jacob's Limousine Transp., Inc. v. City of Newark*, 688 F. App'x 150, 151 (3d Cir. 2017); *Excelsior Ins. v. Pennsbury Pain Ctr.*, 975 F. Supp. 342, 348-49 (D.N.J. 1996). "A contract arises from offer and acceptance and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (quotation omitted). "Thus, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." *Id.* Additionally, contracts must be accompanied by consideration. *Excelsior*, 975 F. Supp. at 349. Furthermore, "[i]n bilateral contracts or agreements, such as the one in the case at hand, where the parties make mutual promises to do some future act, 'the consideration of the promise of one party is a promise on the part of the other.'" *Id.* (quoting *Friedman v. Tappan Dev. Corp.*, 126 A.2d 646, 651 (N.J. 1956)).

Despite these requirements, a settlement agreement does not need to contain every possible term to be enforceable. *Bistricer v. Bistricer*, 555 A.2d 45, 47 (N.J. Super. Ct. Ch. Div. 1987). Rather, "[s]o long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound." *Id.* (citation omitted). "[A]s long as those essential terms are agreed to, 'the settlement will be enforced notwithstanding the fact . . . [that the] writing does not materialize because a party later reneges.'" *McDonnell v. Engine Distribs.*, No. 03-1999, 2007 WL 2814628, at *3 (D.N.J. Sept. 24, 2007) (quoting *Lahue v. Pio Costa*, 623 A.2d 775, 788 (N.J. Super. Ct. App. Div. 1993)). This is true "even [if the parties] contemplate the later execution of a formal document to memorialize their undertaking." *United States v. Lightman*, 988 F. Supp. 448, 459 (D.N.J. 1997).

Finally, in New Jersey, there is a strong public policy in favor of settlements. *Nolan v. Lee Ho*, 577 A.2d 143, 146 (N.J. 1990). Courts, therefore, will "strain to give effect to the terms of a settlement whenever possible." *Dep't of Pub. Advoc., Div. of Rate Couns. v. N.J. Bd. of Pub. Utils.*, 503 A.2d 331, 333 (N.J. Super. Ct. App. Div. 1985); *see also Borough of Haledon v. Borough of N. Haledon*, 817 A.2d 965, 975 (N.J. Super. Ct. App. Div. 2003). Despite this strong policy favoring settlements, a court will not enforce a settlement agreement "where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms." *Bistricer*, 555 A.2d at 47 (citation omitted).

### III. DISCUSSION

As a threshold matter, it is undisputed—and the Court agrees—that the Settlement Agreement constitutes a valid, enforceable agreement. (Pl.'s Moving Br. 7; *see generally* Def.'s Opp'n Br.) It is also undisputed that the Amended Settlement Agreement is valid and enforceable. (Pl.'s Moving Br. 7; Def.'s Opp'n Br. 1 ("The Amendment to the Settlement Agreement (which

incorporated by reference the prior agreement) was negotiated in the wake of non-payments from my client on the original Settlement Agreement . . . .").) The parties, both in April and November 2022, agreed to and memorialized the essential terms of the agreement, and manifested an agreement to be bound by those terms. *Weicher Co. Realtors*, 608 A.2d at 284.

PSL appears to argue that because it is now willing and able to make the payment previously due under the Amended Settlement Agreement, the Court should disregard the other terms of the agreement—namely, the Default terms—and simply allow PSL to make the required payment now, albeit late. (Def.'s Opp'n Br. 2 (wherein PSL's counsel stated: "I say again – this matter should be resolved. Despite my client not making any payments on the Amended Settlement Agreement until January 25th, indeed on that date, I alerted [Ortho's] counsel that ALL of the outstanding settlement monies were in my Trust Account.").)

"Under New Jersey law, [courts] must interpret the parties' contract according to its plain language." *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 255 (3d Cir. 2010) (citing *State Troopers Fraternal Ass'n v. State*, 692 A.2d 519, 523 (N.J. 1997)). In doing so, courts should "read the document as a whole in a fair and common[-]sense manner." *Harder ex rel. Dowdell v. Abdul-Matin*, 965 A.2d 1165, 1169 (N.J. 2009) (citation omitted). "[W]here the terms of a contract are clear and unambiguous[,] there is no room for interpretation or construction and the courts must enforce those terms as written." *Karl's Sales and Serv., Inc. v. Gimbel Bros.*, 592 A.2d 647, 650 (N.J. Super. Ct. App. Div. 1991) (citation omitted).

Through this lens, the Court addresses the parties' requests. The Court is unable to do as PSL asks, specifically, "permit [PSL] to wire the full and final settlement payment to [Ortho's] counsel, along with their reasonable attorney's fees in order to fully and finally close this matter." (Def.'s Opp'n Br. 2.) The Court is constrained to interpret the parties' agreement and "must enforce

th[e] terms as written." *Karl's Sales and Serv., Inc.*, 592 A.2d at 650. The Court, accordingly, must enforce the Default terms as written. The Default terms state:

> In the event PSL fails to meet its obligations to make any payment as set forth in [the payment terms] of this Agreement, PSL shall be in default of this Agreement. In the event that PSL fails to cure the default within ten calendar (10) days from the date of any Notice received by PSL from Ortho pursuant to paragraph 5 of this Agreement, PSL agrees that Ortho shall be entitled to obtain a judgment against PSL in the State or Federal courts of New Jersey for the Total Indebtedness [($408,436.59)], minus any amount . . . that has already been paid, plus 8% interest from the date of the default along with reasonable attorneys' fees and costs resulting from Ortho's collection efforts.

(Settlement Agreement 4.) The Amended Settlement Agreement incorporated these terms. (Am. Settlement Agreement 1.)

PSL failed to meet the payment terms of the Amended Settlement Agreement. (Pl.'s Moving Br. 5, 7; Def.'s Opp'n Br. 2.) PSL's first payment under the Amended Settlement Agreement was due to Ortho by November 30, 2022, and when PSL didn't pay, Ortho sent PSL a notice of default on December 1, 2022. (Pl.'s Moving Br. 5.) PSL's counsel responded that payment would be made by December 5, 2022. (*Id.*) Ortho still did not receive payment on that date. (*Id.*) In order to properly cure the default under the agreement, PSL would have needed to make a payment to Ortho by December 11, 2022. (*Id.*) PSL did not do so. (Def.'s Opp'n Br. 2 (PSL did "not mak[e] any payments on the Amended Settlement Agreement . . ..").) Because PSL breached the Settlement Agreement (and the Amended Settlement Agreement), Ortho is entitled to precisely the relief that it requests.

The relief to which Ortho is entitled under the Settlement Agreement includes "reasonable attorneys' fees and costs resulting from Ortho's collection efforts." (Settlement Agreement 4.) New Jersey law authorizes a party to pay another party's attorneys' fees when a contract provides for such payment. *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 848 (N.J.

8

1999). In reviewing an application for attorneys' fees, the Court considers the factors listed in R.P.C. 1.5(a), which require that a "lawyer's fee . . . be reasonable." R.P.C. 1.5(a). The factors considered in determining the reasonableness include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed on the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. *Id.*

      Here, the Court finds that Ortho's requested fees are reasonable. Ortho has demonstrated that its hourly rates for the fees are reasonable given the attorneys' experience levels and the customary hourly rate in the community. (Pl.'s Moving Br. 10-11.) The fees requested are limited in scope to the "time and effort necessarily expended by Ortho's counsel in connection with collection efforts and enforcing Ortho's remedies" in direct response to PSL's default, as permitted by the Settlement Agreement. (*Id.* at 10.) Ortho has a long-standing relationship with its counsel, and the attorneys practicing in this matter have a combined experience of 50 years as attorneys. (*Id.* at 10-11.) The Court, therefore, finds that Ortho's requested fees are reasonable, and Ortho is entitled to have PSL pay the fees under the terms of the Settlement Agreement.

## IV. CONCLUSION

The Court grants Ortho's Motion to Reopen Matter, Enforce Settlement, and Enter Judgment Against PSL. The Court will issue an order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE
